UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

D.W.[1],

                               Plaintiff,

v.                                               3:24-CV-00861
                                               (AJB/ML)

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.
_____

APPEARANCES:                    OF COUNSEL:

D.W.
 *Plaintiff, Pro Se*

U.S. SOCIAL SECURITY ADMIN.       VERNON NORWOOD, ESQ.
 *Counsel for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

      Plaintiff D.W. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying his application for Disability Insurance Benefits ("DIB"). (Dkt. No.

1.)  Plaintiff is appearing *pro se*, and the Clerk provided him a copy of the Local Rules of

Practice and the *Pro Se* Handbook for the Northern District of New York.  (Dkt. Nos. 4, 5, 10.)

      Plaintiff did not consent to the disposition of this case by a Magistrate Judge. (Dkt. No.

_____

[1] In this particular case, on these specific facts and medical history, this Court will refer to the *pro se* Plaintiff solely by his initials in order to offer greater privacy protection.

11.)  This matter was thus referred to me for preparation of a Report and Recommendation to the Honorable Anthony J. Brindisi, United States District Court Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. Nos. 12, 16.)  This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security benefits.

Currently before this Court is Defendant's motion for judgment on the pleadings. (Dkt. No. 19.)  Plaintiff has not filed a formal brief in opposition to this motion, but did supply this Court with documentation regarding his claims. (Dkt. No. 15.)

For the reasons set forth below, this Court recommends that the Commissioner's motion be granted, and Plaintiff's Complaint be dismissed.

## I. <u>PROCEDURAL HISTORY</u>

On May 19, 2022, Plaintiff filed an application for DIB, alleging disability dating from November 1, 2017. (Administrative Transcript ("T.") 148-154.)  His application was denied initially on June 21, 2022, and his request for administrative reconsideration was denied on October 4, 2022. (T. 55-88.)  Plaintiff's subsequent request for a hearing was granted. (T. 89-90, 117-127.)  On June 13, 2023, Plaintiff and vocational expert ("VE") Eric Pruitt testified by telephone before Administrative Law Judge ("ALJ") Gretchen Greisler. (T. 25-54.)  After further development of the record, the ALJ issued an unfavorable decision on February 21, 2024. (T. 6-24.)  The Appeals Council denied Plaintiff's request for review on May 6, 2024. (T. 1-5.)

Plaintiff commenced this proceeding on July 10, 2024 to challenge the Commissioner's denial of disability benefits. (Dkt. No. 1.)

## II.    GENERALLY APPLICABLE LAW

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides,

3

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence

supports the ALJ's findings they must be sustained "even where substantial evidence may

support the plaintiff's positions and despite that the court's independent analysis of the evidence

may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court

cannot substitute its interpretation of the administrative record for that of the Commissioner if

the record contains substantial support for the ALJ's decision.  *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

       **B.**       **Standard for Benefits**[2]

       To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or

she is "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

*Id*. § 1382c(a)(3)(B).

---

[2]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)
and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited
interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir.
1983) (citation omitted).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments;  (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments;  (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

## III.   **FACTS**

As of the date of the ALJ's decision, Plaintiff was 35 years old. (T. 34, 148.)  At the time

of his June 13, 2023 hearing, he resided with his wife and three young daughters. (T. 35.)  He is

a high school graduate who subsequently obtained an associate's degree in computer science

after taking courses in computer-aided design and drafting. (T. 35-36, 2206.)  After college,

Plaintiff briefly worked in construction prior to enlisting in the United States Army. (T. 36, 1627,

2206.)

Plaintiff served in the active-duty military from July 2009 to November 2014. (T. 142,

148, 2206.)  He is a decorated combat veteran who served as both an infantryman and combat

medic in Iraq. (T. 141-145.)  While in Iraq, Plaintiff was subject to both mortar and improvised

5

explosive device ("IED") attacks. (T. 352, 440.)  At least one IED exploded close enough to knock him unconscious. (T. 440.)  According to the record, Plaintiff has never been evaluated for a traumatic brain injury but has been treated for symptoms attributed to post-traumatic stress disorder ("PTSD") following his honorable discharge. (T. 141-145, 352, 410.)  At the time of his discharge from the Army, Plaintiff was assigned a 100% service-connected disability rating due to his PTSD. (T. 142.)

Plaintiff testified that he had no significant physical impairments but that his PTSD symptoms and other mental health impairments have made it difficult to maintain full-time employment since the completion of his military service. (T. 45-47, 1063.)  He testified that he has worked in a number of positions including road construction worker, line worker at a food packaging facility, and forklift operator for a delivery company but was terminated from all of these jobs after a few months, usually following altercations with supervisors, coworkers, and/or the general public. (T. 38-39, 616-617, 714, 1651.)  He reported that he frequently felt anxious or hostile around groups of people, particularly those he did not know. (T. 202, 1472, 1480.)  He also described difficulties with memory and concentration, and a tendency toward risky behavior due to a "lack of self-preservation." (T. 49-50, 527.)

The record includes Plaintiff's medical and mental health treatment history.  Rather than summarizing those records at the outset, I will refer to the pertinent records during my evaluation of the ALJ's disability determination.

## IV.    THE ALJ'S DECISION

As an initial matter, the ALJ determined that Plaintiff met the insured status requirements through December 31, 2020. (T. 12.)  Based upon her review of the administrative record, the ALJ next found that Plaintiff had not engaged in substantial gainful activity during the relevant

period between his alleged onset date of November 1, 2017 through his date last insured. (*Id.*)

At step two, the ALJ found that Plaintiff's depressive disorder and PTSD constituted severe

impairments through the date last insured. (*Id.*)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or

in combination did not meet or medically equal the severity of a listed impairment, including

Listing 12.04 (depressive, bipolar and related disorders) and Listing 12.15 (trauma and stressor-

related disorders). (T. 12-14.)  Next, the ALJ found that, through the date last insured, Plaintiff

could perform the "a full range of work at all exertional levels" but with certain nonexertional

limitations, specifically:

> [Plaintiff] is able to perform simple tasks at a consistent goal-oriented pace.
> [Plaintiff] can engage in occasional interaction with supervisors, coworkers and
> the public.  [Plaintiff] can perform simple work and tolerate occasional work
> changes.

(T. 15.)

In making this RFC determination, the ALJ stated that she considered all of Plaintiff's

symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R.

404.1529" and Social Security Ruling ("SSR") 16-3p. (T. 14.)  The ALJ further stated that she

considered opinion evidence and prior administrative medical findings in accordance with 20

C.F.R. § 404.1520c. (*Id.*)  The ALJ also considered Plaintiff's subjective complaints regarding

pain, symptoms, and functional limitations and found that Plaintiff's "statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

medical evidence and other evidence in the record . . ." (T. 14-15.)

Relying on written VE testimony, the ALJ found that Plaintiff was capable of performing

his past relevant work as a construction worker through the date last insured. (T. 18.)  Although the ALJ could have concluded that Plaintiff was not disabled at this point, she proceeded to step five. (T. 18-19.)  Again relying on the VE testimony, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could have performed prior to the date last insured, citing several representative unskilled medium exertional occupations. (*Id*.)  Accordingly, the ALJ found that Plaintiff was not disabled for Social Security purposes at any time between his alleged onset date of November 1, 2017 through the date last insured of December 31, 2020. (T. 19-20.)

**V.    ISSUES IN CONTENTION**

Defendant, the only moving party, argues that the ALJ's sequential analysis and her ultimate determination of disability were supported by substantial evidence. (Dkt. No. 19 at 6-16.)

Plaintiff was not represented at his hearing before the ALJ or during his request for review by the Appeals Counsel. (T. 28-32, 140.)  He also commenced this proceeding *pro se*. (Dkt. No. 1.)  Plaintiff did not file a formal brief responsive to Defendant's motion, but did provide this Court documentation related to his status as a service-connected disabled Veteran and a recent arrest that Plaintiff attributed to his PTSD symptoms. (Dkt. No. 15.)

In the Northern District of New York, General Order No. 18 notifies parties of the consequences of failing to file a brief in connection with a social security action: "A party's brief may be its only opportunity to set forth arguments that entitle the party to a judgment in its favor. The failure to file a brief by either party may result in the consideration of the record without the benefit of the party's arguments."  N.D.N.Y. General Order No. 18 at 6.  The Clerk's office provided Plaintiff a copy of this Order and the rules governing *pro se* plaintiffs at the time he

8

filed this action. (Dkt. Nos. 5, 10.)

"In a case such as this, where Plaintiff is proceeding *pro se*, General Order No. 18's promise of a consideration of the merits complies with the special solicitude that the Second Circuit mandates for *pro se* litigants." *Hubbard v. Comm'r of Soc. Sec.*, No. 6:14-CV-1401 (GTS/WBC), 2016 WL 551783, at *4 (N.D.N.Y. Jan. 14, 2016). As such, even when a plaintiff declines to file a brief, a court may "examine[ ] the record to determine whether the ALJ applied the correct legal standard and reached a decision based on substantial evidence." *Id.* (citing *Gregorka v. Comm'r of Soc. Sec.*, No. 6:13-CV-1408 (GTS/TWD), 2015 WL 3915959, at *4 (N.D.N.Y. June 25, 2015)). This Court will do so in this case, and issue its recommendation to the District Court.

## VI.    HEARING PROCESS

### A.    The ALJ properly informed Plaintiff of his right to obtain counsel for his June 13, 2023 hearing.

Although a claimant does not have a constitutional right to counsel at a Social Security disability hearing, he does have a statutory and regulatory right to be represented should he choose to obtain counsel. 42 U.S.C. § 406; 20 C.F.R. § 404.1705. The applicable statute and regulations state that, when notifying a claimant of an adverse determination, the Commissioner of Social Security must "notify [the] claimant in writing" of (1) his "options for obtaining [an] attorney[ ] to represent [him]" at his hearing, and (2) "the availability ... of ... organizations which provide legal services free of charge" to "qualifying claimants." 42 U.S.C. §§ 406(c), 1383(d)(2)(D); *see also* 20 C.F.R. § 404.1706; *see also Drake v. Comm'r of Soc. Sec.*, No. 8:08-CV-1007, 2010 WL 11526780, at *4-5 (N.D.N.Y. Dec. 20, 2010). At the hearing stage, an ALJ should also take steps to ensure that a claimant is appropriately informed of his rights regarding

9

representation.  *Lamay v. Comm'r of Soc. Sec*., 562 F.3d 503, 509 (2d Cir. 2009) (finding that ALJ properly informed claimant of rights when he offered to postpone the hearing to allow claimant to pursue representation, and claimant twice confirmed her preference to proceed with the hearing).  If properly informed of this right, a claimant may waive it.  *Id*. at 508-509.

In this case, the Commissioner advised Plaintiff in advance of the hearing of his right to an attorney or other representative and provided a list of organizations that may provide low or no cost legal services to qualified individuals. (T. 93, 101, 106-109, 118, 122-123, 131-132, 135, 138, 144-146, 155-156.)  The record shows that Plaintiff provided written and verbal acknowledgement of this information. (T. 135, 138.).  At his hearing, the ALJ advised Plaintiff of his right to representation as well as the potential to obtain counsel on a contingent fee or low-cost basis and offered to adjourn the hearing to allow him to pursue representation. (T. 28-32.)  The hearing transcript reflects Plaintiff's consultation with his wife before declining the option to postpone and electing to proceed with the hearing. (T. 29-32.)  During this discussion, Plaintiff stated that he did not trust an attorney to speak on his behalf and questioned the ALJ regarding his rights to appeal her disability determination before affirming that he was ready to proceed with the hearing. (T. 30-31.)

In his April 11, 2024 request for review before the Appeals Council, Plaintiff asserted that he has PTSD and "was too paranoid to ask for legal assistance so it was just me and the judge." (T. 140.)  Although Plaintiff has not raised this claim in his court filings, this Court has considered it under the special solicitude afforded *pro se* parties and found it unsupported by the record, which includes multiple written and oral waivers from Plaintiff indicating that he understood his right to be represented and no evidence that Plaintiff was otherwise coerced into waiving those rights.  Thus, this Court is satisfied that there are no grounds for remand due to

Plaintiff's decision to represent himself during the administrative process.

### B.    The ALJ properly developed the record.

An ALJ has an affirmative obligation to develop a claimant's complete and accurate medical record.  "[T]he Commissioner of Social Security ... shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability."  42 U.S.C. § 423(d)(5)(B); *see also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citation omitted) (noting that a "hearing on disability benefits is a non-adversarial proceeding," and as such, "the ALJ generally has an affirmative obligation to develop the administrative record").  An ALJ's failure to comply with this mandate is legal error. *Rose v. Comm'r of Soc. Sec.*, 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016).  However, the ALJ's duty to develop the record is not unlimited and is discharged when the ALJ "possesses [the claimant's] complete medical history" and there are no "obvious gaps or inconsistencies" in the record.  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks omitted).

The duty to develop the record is "heightened" when a claimant "waives his right to counsel and proceeds *pro se*."  *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009) (internal quotation marks omitted).  This is because the ALJ "must adequately protect" the rights of a *pro se* claimant.  *Id*.  The ALJ's heightened duty requires her to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982); *see also Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018) (summary order) ("When a disability benefits claimant appears *pro se*, the ALJ must 'ensur[e] that all of the relevant facts are sufficiently developed and considered.'") (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  On appeal, the district court must undertake a "searching investigation of the record" to ensure that the rights of the *pro se* claimant were

protected. *Cruz*, 912 F.2d at 11. Moreover, where a claimant is *pro se* and alleging mental impairments, courts have concluded that the ALJ bears a "doubly heightened" duty to develop the record. *Estrella o/b/o M.R.E. v. Berryhill*, No. 15 CV 6966 (CS)(LMS), 2017 WL 2693722, at *21 (S.D.N.Y. June 22, 2017) (citing *Corporan v. Comm'r of Soc. Sec.*, No. 12-Civ-6704 (JPO)(SN), 2015 WL 321832, at *6 n.7 (S.D.N.Y. Jan. 23, 2015)).

It is evident that the ALJ met her heightened obligation to develop the record on behalf of the *pro se* Plaintiff. During the hearing, the ALJ inquired about Plaintiff's medical and mental health treatment history, including his providers within and outside the Veteran's Affairs ("VA") medical system. (T. 33, 44-52.) In light of Plaintiff's testimony that he had received treatment at a private mental health provider, the ALJ advised Plaintiff that she would attempt to obtain outstanding records from that facility. (T. 50-52.) The administrative record includes these additional progress notes along with post-hearing correspondence advising Plaintiff that the ALJ had successfully obtained the material. (T. 262-265, 283-284, 1429-1719.)

The ALJ advised Plaintiff that her disability determination would only address Plaintiff's functional limitations prior to the date last insured, so that a consultative examination of Plaintiff's current condition would not be necessary. (T. 51.) She further advised that she may consult an independent medical expert to review Plaintiff's treatment history and offer his opinion once the record was complete. (*Id*.) The ALJ ultimately did so, in the form of a written interrogatory from a clinical psychologist, Dr. Karl Umbrasas, dated December 16, 2023. (T. 2284-2294.)

The ALJ's decision includes a lengthy discussion of Plaintiff's mental health history and the hearing transcript does not suggest any obvious gaps or defects in the available record. Therefore, this Court is satisfied that the ALJ met her heightened obligation to develop the

record on Plaintiff's behalf and finds no grounds for remand on this basis.

**VII.   SEVERE IMPAIRMENTS**

   **A.   Legal Standard**

   A severe impairment significantly limits the plaintiff's physical and/or mental ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a) (stating an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities).  The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b), 416.921(b).  "Severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis.  The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *Monique Danielle W. v. Comm'r of Soc. Sec.*, No. 5:18-CV-184 (DNH), 2019 WL 2358529, at *4 (N.D.N.Y. June 4, 2019) (quoting *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012)). The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis.  *Rhondalee T. v. Berryhill*, No. 3:17-CV-1241 (CFH), 2019 WL 1100267, at *5 (N.D.N.Y. Mar. 8, 2019) (citing *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012)).

   An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's

ability to work.'" *Mark K. v. Comm'r of Soc. Sec. Admin.*, No. 5:18-CV-627 (GLS), 2019 WL

4757381, at *1 (N.D.N.Y. Sept. 30, 2019) (quoting *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL

294727, at *5 (E.D.N.Y. Mar. 19, 1999)). Although an impairment may not be severe by itself,

the ALJ must also consider "the possibility of several such impairments combining to produce a

severe impairment . . . ." Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985).

However, a combination of "slight abnormalities," having no more a minimal effect on

plaintiff's ability to work, will not be considered severe. *Id*. The ALJ must assess the impact of

the combination of impairments, rather than assessing the contribution of each impairment to the

restriction of activity separately, as if each impairment existed alone. *Id*.

The step two analysis "may do no more than screen out *de minimis* claims." *Vogt on

behalf of Vogt v. Comm'r of Soc. Sec.*, No. 18-CV-231, 2019 WL 4415277, at *4 (W.D.N.Y.

Sept. 16, 2019) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). If the disability

claim rises above a *de minimis* level, then the ALJ must undertake the remaining analysis of the

claim at step three through step five. *Dixon*, 54 F.3d at 1030.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them

severe, an error in the severity analysis at step two may be harmless because the ALJ continued

with the sequential analysis and did not deny the claim based on the lack of a severe impairment

alone. *Tryon v. Astrue*, No. 5:10-CV-537 (MAD), 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7,

2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244 (GLS/ATB), 2011 WL

3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is particularly true because the regulations

provide the combined effects of all impairments must be considered, regardless of whether any

impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523,

416.923; *Dixon*, 54 F.3d at 1031.

**B.      Substantial evidence supports the Commissioner's step two determination regarding Plaintiff's severe impairments.**

As discussed above, the ALJ found Plaintiff's depressive disorder and PTSD to be severe impairments. (T. 12.)  She also considered Plaintiff's documented history of tinnitus and obesity, but found that the record showed little or no treatment for these conditions. (*Id*.)  At the June 13, 2023 telephonic hearing, Plaintiff described his physical problems as "basic wear and tear" and "minor things" while confirming that his disability claim was premised on his mental health impairments. (T. 45-46.)  He then testified regarding his difficulties maintaining his temper when interacting with others, problems with memory and concentration, and periods of suicidal or violent ideation. (T. 48-50.)  Plaintiff also testified that he had "spent most of my life not believing in medicine" but that he "had found some that actually help with mental health" and experienced some improvement in his symptoms. (T. 48.)

In her decision, the ALJ expressly considered this testimony along with the broader medical record. (T. 12, 14-18.)  She also considered the combined effects of all his impairments as part of the larger disability determination.  Accordingly, the ALJ's analysis at step two provides sufficient explanation indicating adequate consideration of the evidence related to Plaintiff's severe and non-severe impairments. (T. 14-15.)  Therefore, for the reasons above, the ALJ's findings regarding Plaintiff's impairments at step two are supported by substantial evidence and do not suggest a basis for remand.

**VIII.   LISTED IMPAIRMENTS**

**A.      Legal Standards**

To qualify as a Listed Impairment, a medically determinable impairment must satisfy all the specified criteria in a Listing.  *See Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y.

2009) (citing 20 C.F.R. § 404.1525(d)). "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Id.*, 614 F. Supp. 2d at 272 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

**B.    The ALJ had substantial evidence to find that Plaintiff did not have a Listed Impairment.**

At step three, the ALJ expressly considered whether Plaintiff's impairments met or medically equaled the severity of a Listed Impairment, including Listing 12.04 (depressive, bipolar and related disorders) and Listing 12.15 (trauma and stressor-related disorders). In doing so, the ALJ evaluated what are classified as the "paragraph b" and "paragraph c" criteria. (T. 12-14.) She found no more than moderate limitations in any of the relevant functional areas: understanding, remembering, and applying information; interacting with others; concentration, persistence, and pace; and adapting or managing oneself. (T. 12-13.) She found no evidence that Plaintiff had achieved "only a marginal adjustment" to daily life or required a highly structured setting or other assistance to meet his daily needs. (T. 13.) As part of this analysis, the ALJ cited documentary and testimonial evidence that Plaintiff's symptoms and overall functioning were much improved when he was compliant with his prescribed psychiatric medication. (T. 12-14.)

The ALJ's thorough analysis demonstrates sufficient consideration of Plaintiff's impairments in relation to the Listings, and her findings are supported by substantial evidence. In addition, this Court's review has not identified any medical findings in the record that would contradict the ALJ's step three findings. As such, this Court finds no grounds for remand based upon the ALJ's determination that Plaintiff did not have a Listed Impairment.

IX.    **RFC DETERMINATION**

A.    **Legal Standards**

RFC is defined as "'what an individual can still do despite his or her limitations . . . .

Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in

an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d

200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (citation

omitted)). "In making a residual functional capacity determination, the ALJ must consider a

claimant's physical abilities, mental abilities, symptomology, including pain and other limitations

which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F.

Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related

limitations created by an individual's response to demands of work . . . must be reflected in the

RFC assessment.'" *Hendrickson v. Astrue*, 5:11-CV-927 (ESH), 2012 WL 7784156, at *3

(N.D.N.Y. Dec. 11, 2012) (quoting S.S.R. 85-15, 1985 WL 56857, at *6). The RFC

determination "must be set forth with sufficient specificity to enable [the Court] to decide

whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d

582, 587 (2d Cir. 1984).

"In deciding a disability claim, an ALJ is tasked with 'weigh[ing] all of the evidence

available to make an RFC finding that [is] consistent with the record as a whole,' even if that

finding does not perfectly correspond with any of the opinions of cited medical sources." *Tanya

S. v. Saul*, 410 F. Supp. 3d 436, 445 (N.D.N.Y. 2019) (quoting *Matta v. Astrue*, 508 F. App'x 53,

56 (2d Cir. 2013) (summary order)). However, it is well established that ALJs are not medical

professionals; therefore, ALJs are "not qualified to assess a claimant's RFC on the basis of bare

medical findings." *Id.* (internal quotation marks and citation omitted); *see Charland v. Comm'r*

*of Soc. Sec.*, No. 1:13-CV-492 (GTS/WBC), 2016 WL 1117515, at *2 (N.D.N.Y. Mar. 22, 2016) ("[A]n ALJ cannot assess a plaintiff's RFC based on the ALJ's own interpretation of the medical evidence."). "In other words, there must be substantial evidence to support a finding of functional limitation(s) or lack thereof." *Tanya S.*, 410 F. Supp. 3d at 445.

"Before assessing the claimant's RFC, the ALJ must consider the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Knighton v. Astrue*, 861 F. Supp. 2d 59, 66 (N.D.N.Y. 2012) (citing S.S.R. 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996)). This requires the ALJ to "make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch." *Walters v. Astrue*, No. 11-CV-640 (VEB), 2013 WL 598331, at *3 (N.D.N.Y. Feb. 15, 2013); 20 C.F.R. §§ 404.1513(a)(2)(i), 404.1569a(a). "The claimant's RFC can be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy only after the function-by-function analysis has been completed." *Knighton*, 861 F. Supp. 2d at 66 (citation omitted); *see Walters*, 2013 WL 598331, at *3 ("Once the function-by-function analysis is completed, the RFC may be expressed in terms of exertional levels of work, e.g., sedentary, light, medium, heavy, and very heavy.").

**B.    Plaintiff's VA Disability Rating was not binding on the ALJ.**

For claims filed on or after March 27, 2017, such as Plaintiff's, the Commissioner "will not provide any analysis in [her] determination or decision about a decision made by any other governmental agency or nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504. However, the ALJ must nonetheless still "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision" that is received as part of the social security

disability claim.  *Id*.

With regard to the VA disability rating, an ALJ satisfies her regulatory obligation by discussing relevant VA medical records as part of her RFC determination.  *See Kathleen S. v. Comm'r of Soc. Sec*., No. C19-5167 (RSL). 2019 WL 4855631, at *8 (W.D. Wa. October 2, 2019) (finding that although ALJ did not address the specific VA disability determination, his thorough discussion of the underlying VA medical records satisfied his obligations under amended regulations); *Jones v. Berryhill*, 392 F.Supp.3d 831, 853 (M.D. Tenn. 2019) (finding that ALJ properly considered VA medical records when she explained that she found them unpersuasive because they reflected largely unremarkable mental status examinations); *see also Lawrence K. v. Comm'r of Soc. Sec*., No. 5:23-CV-00496 (DNH/CFH), 2024 WL 4133823, at *8 (N.D.N.Y. July 10, 2024) (noting that ALJ was not required to discuss plaintiff's 100% VA disability rating).

In this case, the VA has deemed Plaintiff to have a 100% service-connected disability due to PTSD. (T. 142-144.)  In accordance with the regulations, the ALJ did not evaluate the VA's disability rating, but the hearing transcript and the resulting ALJ decision demonstrate her familiarity with Plaintiff's VA treatment record, particularly mental health progress notes from the relevant period between the alleged onset date and the date last insured. That review appropriately informed her RFC analysis and ultimate disability determination.

### C.    The ALJ Marshalled Substantial Evidence to Support Her RFC Determination.

As part of her review of Plaintiff's VA medical records, the ALJ considered Plaintiff's voluntary mental health hospitalization in July 2018 after he expressed suicidal ideation. (T. 15, 307.)  The ALJ noted that this hospitalization coincided with a four-day period when Plaintiff

stopped taking his psychiatric medication because he felt that it was not helping him. (T. 307.)

Plaintiff's depression symptoms improved when his medication was adjusted, and he was

discharged after several days. (T. 307-308.)  The ALJ also cited follow-up treatment notes

wherein Plaintiff reported feeling better after the medication adjustment, with improved mood

and anger management despite lingering depression symptoms. (T. 15, 505.)  His counselor

observed a "notable improvement" in Plaintiff's demeanor and presentation, and Plaintiff

described improved interaction with extended family members and a renewed ability to leave his

home for the gym or outings with his daughter. (T. 479, 483, 485, 505-506.)

The ALJ's decision cited other mental health notes from the relevant period that bolstered

her finding that Plaintiff's mental health RFC improved when he took his medication as

prescribed, and that his symptoms worsened when he stopped taking his medication for an

extended period. (T. 15-18.)  This included multiple "unremarkable" status examinations when

Plaintiff following his prescribed medication regimen, with Plaintiff repeatedly being described

as having a cooperative attitude, stable mood, coherent thought processes, and good attention and

concentration. (T. 17, 329-330, 340-342, 354, 369, 497-498.)  In contrast, the record reflects

increased agitation, verbal and physical confrontations, and thoughts of harm to himself or others

when Plaintiff was noncompliant with his medication. (T. 38-39, 410-412, 466, 533-534, 602).

Plaintiff acknowledged this pattern during his hearing testimony and counseling notes reflect

Plaintiff's recognition that his family members often saw an improvement in his symptoms even

when he felt that the medication was not working. (T. 48-49, 539.)

In addition to the mental health treatment notes, the ALJ also properly considered

Plaintiff's activities of daily living and other regular activities in evaluating the scope of his

functional limitations. (T. 15-18.)  *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d

Cir. 2020) (allowing ALJ to consider daily activities in determining consistency with alleged symptoms). Although Plaintiff reported that his wife and children were a constant source of support and motivation and their care was his primary focus, compliance with his medication allowed him to push beyond his normal comfort level to work out at the gym, take vacations with extended family, and take his children trick-or-treating for Halloween. (T. 16, 366, 483, 485, 939.) The ALJ also considered more isolated events that would reflect on workplace activities, such as Plaintiff's request for help from a caseworker understanding the large amount of paperwork associated with his VA disability benefits in December 2020. (T. 17, 334-335.)

There were no formal opinions from examining sources in the record, so the ALJ requested an independent medical expert opinion from Dr. Umbrasas. (T. 17-18, 2285-2294.) The ALJ found Dr. Umbrasas' opinion to be "partially persuasive," particularly the absence of any marked or extreme mental health limitations. (T. 18, 2285-2286.) However, the ALJ rejected Dr. Umbrasas' overall opinion that Plaintiff had no limitations with regard to understanding, remembering, and carrying out workplace instructions or social interaction. (*Id*.) The ALJ found the absence of such limitations inconsistent with Plaintiff's documented hospitalization and ongoing mental health treatment. (T. 17.) She attributed the difference between her more restrictive RFC determination and Dr. Umbrasas' opinion to the psychologist's review of documents that fell well outside the date last insured. (T. 17-18.) For example, Dr. Umbrasas cited treatment notes from September 2022 and April 2023 in support of his opinion. (T. 1331, 1952, 1958, 2285-2286.)

This Court finds no grounds for remand based on the ALJ's evaluation of the evidence supporting her RFC determination. She appropriately considered the documentary and testimonial evidence that Plaintiff's functional limitations were reduced when he was compliant

with his prescribed psychiatric medication. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (holding that evidence of improvement with treatment and medication detracted from allegations of disabling symptoms); *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487-88 (2d Cir. 2012) (observing that evidence of improvement in response to treatment supported the ALJ's findings. The ALJ did not consider such evidence in a vacuum, however, but properly considered Plaintiff's reasons for noncompliance – particularly his general distrust of medication and his belief that he was not benefiting from the medication. *Shannon Jo H. v. Comm'r of Soc. Sec.*, No. 5:21-CV-878 (CFH), 2023 WL 246841, at *10 (N.D.N.Y. Jan. 18, 2023) (noting that an ALJ must consider an individual's reasons for not complying with prescribed treatment.)

Thus, the record before this Court establishes that the ALJ resolved conflicts between the objective medical record, medical opinion evidence, and hearing testimony by placing the greatest reliance on that evidence that she deemed most consistent with Plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence and plaintiff's testimony and made an RFC finding that was consistent with the overall record. *See Matta*, 508 F. App'x. at 56 (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole). "There is no requirement that the ALJ pick one RFC [opinion] and use that particular evaluation in its entirety." *Alexandrea R.R. v. Berryhill*, No. 15-CV-756 (FPG), 2019 WL 2269854, at *6 (N.D.N.Y. May 28, 2019). Rather, "it is the ALJ's responsibility to choose between properly submitted medical opinions and other competent evidence to piece together an overall [RFC] assessment." *Id.*

In light of the ALJ's analysis, this Court concludes that the ALJ marshalled substantial

evidence to support her RFC determination that Plaintiff could perform work at all exertional levels so long as it involved only simple tasks with occasional changes at a consistent goal-oriented pace, and only occasional interaction with supervisors, coworkers and the public. Therefore, the ALJ's RFC analysis does not present any grounds for remand.

## X.    <u>ABILITY TO PERFORM PRIOR WORK/OTHER WORK</u>

### A.    **Legal Standard**

To answer the step four and step five inquiry, an ALJ may engage a vocational expert to opine on the jobs that a hypothetical person of the claimant's age, education, and RFC could perform in the national economy.  20 C.F.R. § 404.1560(b)(2) ("a vocational expert ... may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairments can meet the demands of the claimant's previous work"); *accord Bapp v. Bowen*, 802 F.2d 601, 606 (2d Cir. 1986) ("If nonexertional limitations significantly diminish [claimant]'s ability to perform the full range of 'light work,' then the ALJ should require the Secretary to present either the testimony of a vocational expert or other similar evidence regarding the existence of jobs in the national economy for an individual with claimant's limitations.").

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question incorporating Plaintiff's limitations.  *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).  The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect Plaintiff's limitations.  *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009).  Where the hypothetical is based on an ALJ's RFC analysis which is supported by substantial facts, the hypothetical is proper.  *Id.* at 276-77.

B.    **The ALJ had substantial evidence to find that Plaintiff could perform his prior work as a Construction Laborer as well as other representative jobs existing in significant numbers in the national economy.**

Because the ALJ recognized that certain mental health records were outstanding, she elected not to question VE Pruitt at the June 13, 2023 hearing regarding work that Plaintiff could perform. (T. 40-41.)  Upon receipt of the additional records, the ALJ submitted an interrogatory dated January 22, 2024 to a different VE, Margaret Heck, presenting a hypothetical individual whose functional limitations mirrored the ALJ's RFC determination for Plaintiff. (T. 268-275.)

In her January 24, 2024 response, VE Heck opined that this hypothetical individual would be able to perform Plaintiff's prior work as a construction worker. (T. 278.)  VE Heck further opined that such individual was also capable of performing other work that existed in significant numbers in the national economy. (T. 278-279.)  In particular, VE Heck identified the representative occupations of "Cleaner," "Lab Equipment Cleaner," and "Salvage Laborer," which are all unskilled medium duty work. (T. 278-279.)  VE Heck further explained that her opinion was consistent with the Dictionary of Occupational Titles and its companion publication, Selected Characteristics of Occupations. (T. 279.)

Because this Court has found the ALJ's RFC determination was supported by substantial evidence, it also finds the ALJ's hypothetical to VE Heck was proper, and the resulting determinations at steps four and five were supported by substantial evidence.  Although Plaintiff likely disagrees with these findings, the ALJ was entitled to rely on the VE's established expertise.  *See McIntyre v. Colvin,* 758 F.3d 146, 152 (2d Cir. 2014) (finding that ALJ could reasonably rely on testimony based on VE's professional experience and clinical judgment.)

As summarized above, the ALJ's decision was based upon correct legal standards, and substantial evidence supports her ultimate determination that Plaintiff was not under a disability

within the meaning of the SSA between the alleged onset date and the date last insured.

      **ACCORDINGLY**, it is

      **RECOMMENDED** that the Commissioner's decision be **<u>AFFIRMED</u>**, Defendant's motion for judgment on the pleadings (Dkt. No. 19) be **<u>GRANTED</u>** in its entirety, and Plaintiff's complaint (Dkt. No. 1) be **<u>DISMISSED</u>**.

      **ORDERED** that the Clerk of the Court shall file a copy of this Report and Recommendation on the parties, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. [3] **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: May 21, 2025
      Binghamton, New York

                        Hon. Miroslav Lovric
                        U.S. Magistrate Judge

---

[3] If you are proceeding *pro se* and served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(c).